[Civ. No. 3682. Second Appellate District, Division One.—August 2, 1921.]

CLARA L. AUCHMOODY, Respondent, v. CITY OF MAN-HATTAN BEACH (a Municipal Corporation), Appellant.

[1] NEGLIGENCE—FAILURE TO DELIVER WATER—ACTION FOR DAMAGES—PLEADING.—In this action to recover damages for the injury caused to·plaintiff's property by reason of the neglect, failure and refusal of the defendant, a municipal corporation of the sixth class, to deliver an adequate and sufficient supply of water to her premises, plaintiff's complaint was sufficient as against a general demurrer.

---

1. Duty of water company or municipality supplying water to extend the services to all applicants willing to comply with its regulations, note, 47 L. R. A. (N. S.) 655.

[2] ID.—EVIDENCE—FINDING.—In such action, from the evidence show-
ing the existence and availability of a substitute water supply ade-
quate and sufficient to have met plaintiff's requirements, showing
that theretofore her requirements had been met, and showing
why they had not been met during the period in question, the court
was warranted in determining that the defendant did not make
any sufficient effort to obtain this substitute water supply, and in
finding that defendant's failure to furnish to plaintiff an adequate
supply of water during the period in question was due to negli-
gence and without cause.

[3] ID.—LOSS OF CHICKENS AND GROWING CROPS AND TREES—DAMAGES
RECOVERABLE.—In such an action, the damages suffered by plain-
tiff by reason of the loss of chickens that died, the loss of
growing crops that were destroyed, and the depreciation or de-
struction of fruit trees actually in existence, were not speculative
in their nature, but they represented actual detriment caused by
defendant's breach of its obligation to supply plaintiff with the
required amount of water.

APPEAL from a judgment of the Superior Court of Los
Angeles County.    John W. Shenk, Judge.    Affirmed.

The facts are stated in the opinion of the court.

Frank L. Perry for Appellant.

Carnahan & Clark for Respondent.

CONREY, P. J.—From the year 1908, and at all times
thereafter to and including the time of the transactions cov-
ered by this action, the plaintiff was the owner of a tract of
land, containing about twelve acres, within the city of Man-
hattan Beach, a municipal corporation of the sixth class.
During more than four years immediately preceding July,
1914, the Hermosa Beach Water Company, a public utility
corporation, was engaged in furnishing water through a
distributing system established by it, supplying practically
all of the consumers of water within the corporate limits
of defendant city, together with consumers situated outside
of said city.    During all of that time, and until the first day
of July, 1914, the plaintiff received from the water com-
pany an adequate supply of water for domestic, agricultural,
and horticultural needs upon said property.    Plaintiff had
improved her lands by setting out thereon eight acres of
various kinds of orchard trees, as well as annual crops of

agricultural and garden products. On the first day of July, 1914, these trees were in normal growing condition.

Prior to the first day of July, 1914, the defendant was authorized to and did construct and install a municipal water system for the purpose of furnishing an adequate supply of water for domestic, agricultural, and horticultural needs to practically all water consumers, including the plaintiff, within the corporate limits of the city, and, with the approval of the Railroad Commission of the state of California, entered into a contract in writing with the water company whereby the defendant assumed the service of said consumers situated within its corporate limits, including the plaintiff, commencing with the first day of July, 1914, at which time it was agreed that the water company should withdraw from the city of Manhattan Beach and discontinue the service of water to any of said consumers. By the terms of that contract the city obtained the right to purchase water from the company at wholesale "through the capacity" of mains then owned by the company delivering water to the city limits, such water to be furnished at a price stated in the contract. The city intended to obtain its primary source of water supply from a well put down by the city within the corporate limits. The contract right to purchase from the water company was relied upon to furnish a secondary supply to the extent that it should be needed by the city.

In this action the plaintiff seeks to recover damages caused to her property resulting from neglect, failure, and refusal of the defendant to deliver an adequate and sufficient supply of water at the premises described in the complaint. The first cause of action stated in the amended complaint relates to the alleged negligent failure of the defendant to furnish an adequate supply of water to the plaintiff during the first nine days of July, 1914, and the resulting damage to the plaintiff's crops, trees, and to a large number of chickens kept by the plaintiff upon said premises. The second count is for additional damages suffered by reason of the further neglect and failure of the defendant to furnish an adequate supply of water to the plaintiff from the ninth day of July to the eighth day of October, 1914. The findings of the court are in accordance with the facts above stated. The court further found that at all of said times beginning with

the first day of July, 1914, the defendant, with the exercise of ordinary care, skill, and diligence in the management and operation of said water system, was able to furnish to plaintiff and to all other consumers upon its said water system an adequate supply of water to meet all of their reasonable domestic, agricultural, and horticultural needs; that by reason of the failure of the defendant to furnish such adequate supply to the plaintiff, almost all of plaintiff's chickens died, her cantaloup vines and pepper plants died, a very large portion of the trees upon her premises died, and a very large portion of the remaining trees thereon were stunted and delayed in their normal maturity from one to three years; that by reason of the injuries so suffered, the plaintiff suffered damages in the sum of $2,090. The defendant appeals from the judgment.

[1] The defendant presented a general demurrer to each count of the complaint. It is now contended that the court erred in overruling that demurrer. It is first suggested that in the first count the plaintiff did not allege that she offered or tendered in money the established water rates of the city. In said first count it was stated that the plaintiff demanded said water from the defendant, and was ready, able, and willing, and did offer, to pay therefor. Next it is suggested that the second count fails to show that the defendant had the ability to furnish the plaintiff with water from July 9, 1914, to October 8, 1914. In the second count we find that it was alleged that during all of said period of time the defendant "was well able to deliver and did deliver to the immediate neighbors of the said plaintiff and to the residents of the said city of Manhattan Beach in general except the said plaintiff herein, as aforesaid, a sufficient and adequate supply of water." We think that as against a general demurrer, which only suggests that the complaint did not, in either count thereof, state facts sufficient to constitute a cause of action, the complaint was sufficient.

Appellant contends that the damages sustained by plaintiff, as stated in the first count of the complaint, were the result of her own act in that she prevented the city from installing a meter connection in front of her property and making a water connection to that property. We have examined those portions of the evidence to which counsel have referred in support of their position. From this evidence it

appears that the plaintiff objected to the attempt made to install a five-eighths inch meter in front of her property and a five-eighths inch pipe connection, and claimed that she was entitled to have, as she had theretofore had, a larger meter and larger water connection. That she was so entitled appears to have been conceded by the city. The evidence merely shows objection and protest made by the plaintiff, but not any act, forcible or otherwise, actually preventing the installation as attempted.

[2] The next claim is that the evidence is insufficient to show negligence on the part of the defendant. It is conceded that, in order to recover, the plaintiff must show negligence on the part of the defendant. The evidence did prove the existence of a water supply adequate and sufficient to have met plaintiff's requirements. The fact that the Hermosa Beach Water Company continuously for four years prior to that time had furnished this required amount of water to the plaintiff's premises, taken together with the other facts to which we have referred, was sufficient *prima facie* to warrant the court in determining that the defendant, in the ordinary course of its business, could have continued to furnish to the plaintiff the same supply which she had theretofore received, and that the failure so to do resulted from some fault of the defendant.

To fully exhibit the situation as shown by the evidence would require a longer description than should be made here of the distributing system of the city and of the physical conditions under which the water was distributed. Suffice it to say, that the city contained a section of high ground, which included the lands of the plaintiff, and that there were other lower areas near the ocean; and that the city attempted to supply the higher ground by gravity flow from a high tank to which water was to be pumped from a reservoir situated on lower ground. Some time in July the "booster pump" used to force water to the high tank broke down and there was considerable delay in restoring that means of supply to the high tank. There is evidence tending to prove that the defendant could have obtained from the Hermosa Beach Water Company, from a high tank of that company, a supply of water which could have been connected with the distributing system of the defendant in such manner that the city could have continued to furnish an

adequate supply of water to the plaintiff. The water company was willing to furnish this water, but the representatives of that company and of the city did not come to an agreement covering the expense of making certain necessary additions to the pipe-line. We think that the court was warranted in determining that the city did not make any sufficient effort to obtain this substitute water supply, and in finding that defendant's failure to furnish to plaintiff an adequate supply of water during the entire period of time covered by the complaint was negligent and without cause.

[3] Concerning the amount of damages awarded, appellant claims that the evidence shows that the plaintiff received sufficient water for all ordinary needs; that the court erred in allowing the sum of $500 as damages for destruction of chickens which the plaintiff had on said premises; that the sum of $690 damages awarded for the destruction of plaintiff's pepper crop was an award of speculative damages not allowed by law. So far as the facts are concerned, there is sufficient evidence to support the court's finding that these losses were incurred, and that they were the proximate result of defendant's failure to furnish the necessary supply of water.

The damages were not speculative in their nature, but they represented actual detriment caused by defendant's breach of its obligation. Appellant relies upon certain decisions which have held that where damages are claimed for refusal to furnish water upon land the true measure of damages must be determined by ascertaining the difference between the rental value of the land with water and its rental value without water. (*Crow* v. *San Joaquin Irr. Co.,* 130 Cal. 309, [62 Pac. 562, 1058]; *Fresno Canal & Irr. Co.* v. *Perrin,* 170 Cal. 411, [149 Pac. 805].) These were cases in which the plaintiff attempted to prove that he would have raised certain kinds of crops and that he would have obtained certain profits therefrom if he had received the supply of water to which he was entitled. As was said by the court in *Pallett* v. *Murphy,* 131 Cal. 192, [63 Pac. 366]: "Evidence as to the value of a possible crop that might be grown with the use of water would be as purely speculative as could well be imagined." But in the present case the losses incurred consist in the depreciation or destruction of value of property actually in existence. These losses were capable

of ascertainment by direct evidence, and were not at all speculative in their nature. Under these circumstances, the loss of chickens which died, and the loss of the growing crops which were destroyed, were of such a nature that recovery can be had therefor. (*Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942].)

The judgment is affirmed.

Shaw, J., and James, J., concurred.